Good morning, Your Honors. May it please the Court, Seagal Chadda appearing on behalf of the appellant, Frederick Rizzolo. And I am here with my co-counsel, Vincent Severisi. Okay. And before I start, I would like to thank this Court. Today is my first time appearing in front of the Ninth Circuit. Welcome. And I am honored and humbled to appear on a case of this magnitude. Thank you for coming. Thank you for this opportunity. Appreciate that. Thank you. And the reason that this is a case of such magnitude is because this is not necessarily a case about crime and punishment. This is a case about government accountability and what has happened when a defendant provides a substituted asset to the government for the sale and distribution of proceeds of that sale for the payment of forfeiture and the fines and restitution. And with that, once the government receives such an asset, when the government takes that asset and does everything in its power to deliberately destroy the asset by failure to maintain a grandfathered use such as an adult license, at that point, as we have seen in cases both in the Ninth Circuit and the Supreme Court... Before we get too far along, and I hate to interrupt your argument, especially since this is your first one, but there's one question that I have, and that is, the order of substitution doesn't seem to go in the same direction you're arguing. In other words, the order of substitution just says that the asset shall be sold and applied to the forfeiture and restitution obligations of the defendants. Now, you didn't object to that order, did you? No, Your Honor, we did not. And there was a first and a second orbiter of forfeiture, and you didn't object to any of them, did you? No, Your Honor, we did not. Well, then, this seems to show that the Court's intent was not, as you suggest, but was intend instead that the Court intended to apply the sales proceeds, not the property value at the time of the substitution. That's correct, Your Honor. You agree with that? I agree with that, and the... So then your claim, then, that the forfeiture of the club relieved your client of any further obligation wouldn't be so. I'm sorry? Then your claim that the government's forfeiture of the club, the whole, relieved him of any further obligation couldn't be so, because at that point, we're saying we're going to take these assets, we're going to sell them, and the sales might relieve obligations, but just taking the asset does not. We did not object to the government substitution and the subsequent forfeitures and the amended forfeiture orders. Well, and that's very important. And when you didn't object, it seems to me, then, the order suggests that just because they took the club or the property didn't relieve of any obligation, what happens is you take the club and then the sales of the proceeds might relieve of the obligation. Do you agree? I do agree. All right. Based on the notion that Mr. Rizzolo entered into these stipulations and the subsequent forfeiture stipulations with the knowledge that the United States government was going to do everything in its power to maintain the value of the club. So really we're talking about alleged waste? Correct. So that's really the big argument here today is was there waste? The big argument is whether the waste of the asset breaks the proximate causation of the depreciation of the value of the asset. All right. So then my next question, without trying to steal too much time from my colleagues, is what is my standard of review in determining whether the district court erred in finding that the government's actions did not cause the decline in the property value? We believe that under the terms and the situation. Now, just a minute. My question was what is my standard of review of the district court's decision? This is an abuse of discretion. So I am to look at this and say, okay, district court, you had all this in front of you. People presented evidence here and there. And the decision you made, unless it's a clear abuse, is okay. I agree. You're going with that? I'm going to go with that. All right. Can I ask a question? Yeah, go. Any time. You can interrupt me. Yeah, but be careful about that. Why is it abuse of discretion and not clear error inasmuch as the issue is a factual one? Because the reduction of restitution under these terms when the United States government established a clear price in 2008 of a $31 million asset and then that the lower court did not comply with that value and placed the burden on us to establish a value of an asset is an abuse of discretion. The inconsistency in the lower court's ruling and not following the 2008 ruling, that would be an abuse of discretion. Well, earlier you said the government deliberately destroyed the asset. What evidence is there that the government deliberately destroyed the asset? And if there is such evidence, why isn't that a fact question for the district judge? The evidence that we have that the government deliberately wasted the asset is the fact that in 2008, the government had the opportunity to operate a club. They made a moral judgment not to operate an adult entertainment business in a city like Las Vegas. And in 2008, when the adult use permit was set to expire, they came to the judge and requested declaratory relief to not have the – to stay the expiration of the adult use. Yes. Judge – the lower court judge specifically told them, you waited until the 11th hour to come to me and intervene. And at that point, he said, I'm not going to intervene. I'm not going to invalidate a completely legitimate and constitutional local rule. And not only that – But why is that evidence of purposeful, deliberate – deliberateness? Because the government had spent almost a year trying to sell the asset, right? The government – The government had identified and considered several potential purchasers, correct? They refused to sell the asset to those purchasers. Well, what's the evidence that they refused, as opposed to the deals didn't close, just as the deals didn't close when the property was being offered by the appellant? Correct. What are we to do with the historical fact that there was a big crash in 2008? The value of the asset was not in the real estate. The value of the asset was in the grandfathered adult use permit, that because the government, despite offers to license the United States Marshal Service, despite offers from the mayor to license the United States Marshal Service to open this club for one hour and sell one drink to maintain the grandfathered use permit, they refused to do so. So the value, the $22.9 million reduction in value was – which we are going according to the government's price. When the government came and begged the United States District Court to stay the expiration, the value was not in the real estate. The value was in the adult use. That's where the value came in. The real estate was just like any other real estate without the adult use or the liquor license, which was such a valuable asset. And that's where the value came in. It's not in the real estate. Your Honors, what I would like to do is reserve five minutes for rebuttal. If you have any questions you want to ask her, go ahead. Just a minute. There's substantial evidence in the record of substantial efforts made by the appellant during the first year following the – after the entry of the plea to sell the property. Do you agree with that? Do you agree that the appellant made numerous efforts to sell the property during the first year following the entry of the plea?  And those were unsuccessful. And those were unsuccessful. We did have a third-party operator that was operating to maintain the use. Right. And that operator then was terminated and his license was rescinded. Correct. But is it your position that the record shows that during the first period following the forfeiture that the government didn't also seek buyers? The government did not market the property in the way that the property should have been marketed. This was a special-use property. I understand. Well, but I guess what we're really trying to get at, regardless of exactly the standard we would use, was these are arguments that you made to the district court. The government made other arguments. And now it is for us to give some deference, if you will, to the district court's decision. So your argument may be good, but if there is a countervailing argument with some substantial evidence to it and the district court accepts that rather than yours, we're kind of bound by that argument, aren't we? Based on the standard of review? To a certain extent, you are bound by that argument. And so we're again asking, in that circumstance, what is the case or what is the law which would suggest that the district court was out of whack in the acceptance that it did of the government's case? One of the cases that I could reference to is U.S. v. Baconia, and I might be mispronouncing it, which is a Second Circuit case where, in that case, the defendant surrendered $19 million in assets to HUD. And at that time, HUD cut a deal with a city development group that purchased the assets at $1.9 million. So the court in Baconia made a very, a very deliberate finding that based on the deal that HUD cut on Baconia, that they cannot hold the loss, the loss attributable to the proximate cause of the defendant, because the defendant did not cause that sale from $19 million asset to a $1.9 million asset because it was a nominal value exchange. Here, let's not forget, the government never even paid the mortgage. The government never even paid the mortgage on the asset. So there was no money made on the asset. There was a foreclosure, a deed of trust foreclosure on the asset where, despite collecting half a million dollars in rent on the asset, they never paid the mortgage. So that's a waste and that's a loss. All right. I understand your argument. I understand you want to reserve some time. I do. And we've eaten in the time you want to reserve, so we'll give the government the chance. Thank you. Thank you, Your Honor. Good morning. May it please the Court. Elizabeth White for the United States. There is significant evidence in the record of many, many attempts to sell this property beginning from the time of the plea agreement. The plea agreement called for Mr. Rizzolo to sell the property within 12 months, and there appear to be numerous attempts to do so. The plea agreement was when? In 2006, June of 2006, I believe. Right? And the plea agreement gave Mr. Rizzolo 12 months to sell the property. At the end of that 12 months, the property was not sold. There was actually a provision that if there was a contract for sale at the end of that 12 months, then it would be extended for another two months to try to close that sale. Is there anything in the record that shows that he tried to sell it? There were. At the time of, let's see, what he did, what we know for sure is that very soon after the plea agreement, the City of Las Vegas revoked the liquor license based on the club pleading guilty to RICO conspiracy and the defendant pleading guilty to defrauding the United States. Mr. Rizzolo sort of turned the club over to this Michael Signorelli, who got a temporary liquor license and reopened the club. And as the government has explained in numerous proceedings, for the next year Mr. Signorelli essentially bled the club dry. Withheld, didn't pay payroll taxes, didn't pay sales taxes, didn't pay rents. And the city had offered him that license with the provision that he would buy the club at the end of the year. The end of the year comes, he walks away. But there was a contract under which he was to purchase the club, correct? Yes. And that's the one he entered as a result of the efforts of the appellant, correct? Yes, yes. And so that sale didn't happen. At the time of the forfeiture, or at the time of the substitution, I'm sorry, there were three additional signed contracts to purchase the property. One for, it was like $32 million, $31 million, and $29.5 million. And the substitution, there was a hearing on that. Actually, both parties filed pleadings the same day asking the court to approve those sales so that we could go forward, so that Mr. Rizzolo could go forward and negotiate one of those three sales. And the substitution said, okay, the court approved those three and said, yes, Mr. Rizzolo, try to do those three. And then if you can't, then the marshal service will take over and try to sell it. All three of those sales fell through. And then the marshal service took over. And they did attempt to sell it. And I actually don't know, this is the first I'm hearing some sort of accusation that the marshal service didn't try to sell the property. There were numerous contracts. They have actually, they complained in prior pleadings that we had these things under contract to people for too long. At one point, we actually had an approved contract that was ready to go, took it to the City of Las Vegas, and they wouldn't give that buyer a liquor license. So that one fell out. So I think, I mean, the fundamental question here is, it is true, everyone thought at the time of the plea, at the time of the substitution, everyone thought that this club was worth $32 million. But as Judge Proulx said at the hearing, you know, you can talk about what something is worth, but what something is worth is what somebody is willing to pay for it. And nobody was willing to buy this club. Now, why was that? There wasn't, you know, the liquor license had been revoked, and Mr. Signorelli's temporary license had been revoked. And at one point, Mr. Rizzolo's former counsel was saying, had said that he didn't believe that when the club was not operating, that it wouldn't be possible to finance the sale if the club wasn't operating. And the club wasn't operating because the liquor license had been pulled. Judge Proulx at one hearing suggested that it was a bunch of litigation, ancillary litigation of, you know, different claimants on the property. And, you know, and Judge Proulx said, this can't be helping. You know, who's going to want to buy something when there's ‑‑ Can the government operate a club like this? The government from the ‑‑ could they? Maybe. Is there any legal impediment to their getting a liquor license? I don't think there is a legal impediment. We were very, very clear from the very beginning that the United States government was not going to operate a strip club. And that was ‑‑ the one document that's missing, that I haven't been able to find, and I don't even see it on the document, is the hearing, the transcript of the hearing where the decision was made to substitute the asset. Because the government had filed a motion to substitute the asset, approve these sales, allow Mr. Rizzolo the opportunity to try to complete one of these three contracts, and then substitute the asset and use the proceeds to attempt to satisfy the restitution and forfeiture. At that hearing, which is weird because both the defense counsel and the district court at various later hearings refer to the transcript of that hearing, but we don't have it and it's not on the docket, so I'm not sure where that came from. But at that hearing and every hearing since, the government was very clear that it was not going to run a strip club. But the district court rejected that argument, didn't it? The district court did not accept the government's position that it couldn't do so? I don't know that the government ever made the argument that it couldn't do so. What we said is that we wouldn't do so. And we said that from the very beginning. We are not going to run a strip club. Let me ask you this question. The substitution occurred in August of 2007. Yes. The motion for a stay was filed in June of 2008 in light of the impending June 30, 2008 deadline for the expiration of the permit. Yes. Given that the government chose to seek that relief when it did, why didn't it act more quickly? Why didn't it act sooner? Well, Either to have that as a remedy or to seek an interim operator. Yeah. Oh, I'm sorry. And obviously the district court denied us that relief, which the defendant had joined in that request. But I think that one thing that had happened. That relief was six weeks before the liquor license was set to expire. Yes. And that was very soon after. And I'm sorry that I don't have the exact date, but there was one contract that we had worked out with buyers to the point of signed. It was in escrow. They went to the city, and the city refused to give them a liquor license. And so I think we were very, very close to the point that we just thought that this wasn't going to be necessary. And then when the city rejected the liquor license to these potential buyers, which was sort of a tenth-hour decision, we were stuck with the eleventh-hour decision of trying to move forward with this. Where is this place? It's in Las Vegas. I don't know. I'm sure that the appellants would be able to answer that question for you. I'm from Reno. I don't get down to Vegas very much. But at the end of the day, this is what Judge Proe, who before he retired, I mean, he's been handling this case for eight years, right, and he'd seen all the different machinations of it. And this is not the first time that Mr. Rizzolo had attempted this. I mean, he filed a request for final order of satisfaction in 2010 saying that this substitution should take care of all of my obligations, and Judge Proe denied it. And actually, Judge Proe denied it, and then the defense counsel said, is this a final order because we're going to want to get that reviewed? And he said, you filed a motion. I denied it. And they did not appeal, and that was 2010. Then they came back in 2011. And I mean, it seems like, you know, as Judge Proe is well aware of Mr. Rizzolo's eight-year effort to avoid the consequences of his actions and avoid the having to pay this restitution and forfeiture that he had. Counselor, the one question that I think is somewhat worrisome to me is the last question. We can talk about whether the district court erred in saying the government didn't waste, and we have some deference we're supposed to give to the district court, and we know that the asset declined in value. So why is it that we should affirm the district court's idea that the decline or that the situation presented did not find changed circumstances presenting meriting relief under 1836-64? When you get to the changed circumstances to reduce the restitution based on his current inability to pay, you know, I think that there is this asset, there's this one asset that, like I say, everybody thought was worth $32 million, and it turns out that it's not. Now we're trying to decide whether the district court was right in saying, well, there's no changed circumstances. Well, and for that, you have to look at the circumstances of the defendant as a whole, right? I mean, that's about whether he can pay the restitution. I mean, the fact that there's one asset, the question is whether he can pay this restitution. And, you know, and what we have is they didn't bring forward any evidence about his current financial – I mean, he made these monthly reports to probation, but beyond that, there was no presentation of his current financial situation to the court, which the court would probably pretty reasonably have been skeptical of, given the millions of dollars that, over the years, that Mr. Rizzolo has gone to great lengths to remove from the ability of the United States to get it. I mean, beginning while this plea was being negotiated, which would require him to sell the club, he takes out a $5 million loan and secures it against the club, transfers $7 million in assets, you know, out of the country and offshore. He ended up – I mean, his probation was revoked, and he was sent back to prison for another nine months because of hiding assets and offshore accounts. And so this coming to the court and saying, oh, my situation has changed without providing evidence, and that's what Judge Pro found, was that he hadn't satisfied that burden of providing evidence that he was unable to pay the restitution. And that standard of review is clear error. I mean, that is a factual finding, and there's just no clear error here. Just one thing, which wasn't mentioned, but I do want to raise, because I know there's a lot going on in this appeal, and so I did want to just take a moment and kind of clarify what is not involved in this appeal. And one, first and foremost, is the $10 million in restitution to the Henrys. In the district court, the appellant repeatedly and emphatically said this motion is not about the $10 million restitution to the Henrys. And, in fact, in their reply, they kind of took the government to task for raising the $10 million restitution, saying that's not what this is about, that's not what this is about. And then here comes the opening brief saying they want to be relieved from this $10 million in restitution. So regardless of anything, that was not merely forfeited. That was waived when they explicitly said to Judge Pro the restitution to the Henrys is not before this Court. Thank you. Very good. Thank you for your argument, ma'am. Could I ask you one last question? Oh, yes. I'm sorry. The district court said that the decline in the real estate market in Las Vegas was among the reasons for the decline in the value of this asset. Do you agree with that, that he said that? Well, just to be precise, he says, Rizlo has not presented any evidence from which this Court could determine how much, if any, a decline in value was due to alleged waste by the government versus the dramatic decline in property values during the relevant timeframe. What evidence was presented during the hearing as to the dramatic decline in real estate values? I don't believe that there was. I think that, I mean, you know, I think folks in Las Vegas, I think you can almost take judicial notice in Las Vegas in the late 2000s. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Vincent Savarese, also on behalf of Mr. Rizlo, I'd like to make a few comments in rebuttal. Our client surrendered a $31 million asset to satisfy all of his obligations in this case. We do not shrink from the fact that our client is not a Boy Scout. Our client was convicted of these offenses, but he did his time. He gave everything he had and turned it over to the government by agreement. They took that asset, a landmark institution of its kind, in the Las Vegas adult entertainment community, which is a unique market. Where is it exactly? It is, it was on Industrial Road. It was right off of the Las Vegas Strip, very, very close to the Las Vegas Resort District, in an area which at the time was properly zoned for adult use. He had a grandfathered adult use license that was many years of longstanding. The asset, where the government completely agreed, was worth in excess of $30 million. And what did they do? They insisted on acquiring it and forfeiting it as a substitute property, and our client agreed to that. But once they acquired all right, title, and interest, they didn't pay the mortgage. They allowed the license to lapse. They did nothing about it. They allowed this valuable asset, which was ample money, available to take care of all of these obligations, and they deliberately allowed unconscionable economic waste to take place. And they did it deliberately, and the court earlier asked, why is it deliberate? It's deliberate because it was a policy that was undisclosed to our client, when he entered into this agreement, that they had no intention of actually preserving this asset. Now, this was a lawful enterprise. What was the policy? The policy not to run and operate an adult-oriented business. But there was no policy against selling, correct? Excuse me? There was no policy not to sell the asset? It was their policy not to operate it. And they could have had a receiver appointed. They could have asked Judge Pro for an independent manager to take that business and preserve it for the benefit of Mr. Henry and everyone else involved. There would have been enough money to make all the restitution, pay the fines, satisfy the forfeitures with change left over to reverse. Anybody ask for a receiver or suggest a receiver should be appointed? No. The government did not ask for a receiver. We agreed to the ---- You made this argument, didn't you, to Judge Pro? We did. And Judge Pro ---- And then Judge Pro, taking what you did with your argument, compared that argument to the argument of the government and made a decision about that, correct? That's correct. And we're stuck with saying, did he make clear error? Right. Was what he did so out of the ordinary that it is impossible to have suggested? And all I'm trying to do is I'm trying to say, based on the standard of review, what are you going to tell me? What case, what something do you have to suggest what Judge Pro did was clear error, abuse of discretion, whatever? What do you have? I'll give it to you right now. I mean, I listened to her case, but I don't think that is the same. All right, Your Honor. Let me try to be directly responsive to your concern. I would direct the Court to the recent decision of the United States Supreme Court in Robert. Okay. Okay. If the Court would look to Robert for guidance here, R-O-B-E-R-S. Well, you've gone over your time, so let me look at Robert. Okay. And let me ---- You've gone over your time. I would beg you to let me quote Judge Pro. Okay. The Court asked this question earlier, and I would like to very briefly. When the city desperately, the government desperately went to him and asked for extraordinary relief to stay in the enforcement of a local ordinance so they could try to get more time to sell this asset, knowing that they were about to lose $22 million worth of value that they conceded would be lost upon the expiration of the license, Judge Pro ruled as follows. The Court finds ---- Tell me where in the transcript do we find it, and I'll read it so that we can get through. It is toward the very end of the transcript. Where? On what page? Do you have that? I don't have it right before me, Your Honor. How long is it you want to read me? One sentence. All right. One sentence. One sentence. I'll live with it. And it sums up the matter we think that the Court should focus on. The Court finds that the United States has significantly contributed to the dilemma that brings it to this Court, seeking extraordinary relief at the 11th hour. The United States could have attempted to extend the license and permits for the forfeited property by operating the Crazy Horse II directly or through a receiver. It chose not to do so. And in the Robert decision, the United States Supreme Court said, and I quote, one sentence. Come on. How many times are you going to ask me for this? Okay. Thank you very much for your argument. All right. Thank you, Your Honor. All right. Case 13-10643, United States of America v. Power Company, is submitted.
judges: Kronstadt, Schroeder, Smith